Arcadia Coal Company and The Ohio Casualty Insurance Company, Petitioners v. Workmen's Compensation Appeal Board (Joseph Kubalic), Respondents.

Submitted on briefs October 5, 1983, to Judges WILLIAMS, JR., MACPHAIL and BLATT, sitting as a panel of three.

*Paul E. Sutter, Hirsch, Weise & Tillman,* for petitioners.

*David J. Tulowitzki, Pawlowski, Long, Creany & Tulowitzki,* for respondents.

OPINION BY JUDGE MACPHAIL, December 19, 1983:

Arcadia Coal Company (Employer) appeals from a decision by the Workmen's Compensation Appeal Board (Board) which affirmed the referee's award of compensation benefits to Joseph Kubalic (Claimant).

Claimant worked as a coal miner for Employer for seven years. Claimant terminated his employment on October 15, 1976, because his shortness of wind made

it impossible for him to perform his coal mining work. On April 3, 1979, Claimant was examined by Dr. Robert F. Klemens who diagnosed Claimant's condition as coal worker's pneumoconiosis. Dr. Klemens mailed his report which contained his diagnosis to Claimant on or about April 9, 1979.

The controversy in the case *sub judice* concerns the issue of Claimant's knowledge of his disability. On direct examination, Claimant testified that he did not know about the contents of the report until it was explained to him at his attorney's office on May 1, 1980. On cross-examination, Claimant testified that he received Dr. Klemens' report sometime in April 1979, and that on the day of his examination, Dr. Klemens told Claimant that he had coal worker's pneumoconiosis from inhaling coal dust at work which caused Claimant to be disabled.[1] Dr. Klemens testified that

---

[1] Claimant testified on cross-examination:

Q: Now, after Dr. Klemens examined you on April 3rd, 1979, he prepared this report dated April 9, 1979; is that right?

A: Yeah.

Q: Did he forward that report to your home?

A: Yeah.

Q: Would that have been sometime around April of 1979?

A: Somewhere around that time.

Q: So you received Dr. Klemens's report dated April 9th, 1979 sometime in April of 1979?

A: Yes.

Q: When Dr. Klemens's examined you did he tell you that you had dust in your lungs?

A: Yes.

. . . .

Q: So you knew then in 1979 that you had coal workers' pneumoconiosis and that it was causing sufficient disability that you were not able to perform the types of work you had performed in the past; is that correct?

A: Yes.

he had no recollection of discussing the results of the examination with Claimant.[2]

Claimant filed a claim petition for compensation benefits on May 9, 1980. The referee found, based on Dr. Klemens' medical report and testimony, that Claimant was partially disabled from coal workers' pneumoconiosis as of April 3, 1979; and that Claimant first knew of his disability on May 1, 1980. The Board affirmed the referee's decision.

Employer argues that the referee's fact-finding that Claimant first knew of his disability on May 1, 1980, is unsupported by substantial evidence, and that the referee erred in failing to make a finding as to when the Claimant should have known by the exercise of reasonable diligence of the existence of the disability.

It is well settled that timeliness of a claimant's notice of his disability to his employer is mandatory

---

Q: Now this disability from pneumoconiosis that Dr. Klemens advised you about, did you attribute this pneumoconiosis and black lung to your coal mining work?

A: Yes.

[2] Dr. Klemens testified:

Q: Did you only see Mr. Kubalic on one occasion?

A: To my knowledge, yes.

Q: Is it possible that you talked to Mr. Kubalic on the telephone following your examination?

A: That's a possibility. Occasionally individuals will call and ask me about the report. But, you know, I have no notation that I did that, nor do I remember doing that.

. . . .

Q: Doctor, Mr. Kubalic has indicated that you advised him of the results of the examination. He really wasn't specific as to when you advised him of those results. Can you state with a reasonable degree of medical certainty that you never discussed the results of the exam with Mr. Kubalic whether it be by telephone or some other means?

A: That's my thoughts. Now, there is an outside chance that we did discuss it on the telephone. I wouldn't swear that I didn't, but I have no recollection that's what happened.

for recovery of workmen's compensation benefits. *Duquesne Light Co. v. Workmen's Compensation Appeal Board,* 53 Pa. Commonwealth Ct. 92, 95, 416 A.2d 651, 653 (1980). Section 311 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §631, sets forth the specific time limitation for giving notice to the employer.

Unless the employer shall have knowledge of the occurrence of the injury, or unless the employe or someone in his behalf, or some of the dependents or someone in their behalf, shall give notice thereof to the employer within the twenty-one days after the injury, no compensation shall be due until such notice be given and, unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed. However, *in cases of injury resulting from* ionizing radiation *or any other cause in which the nature of the injury or its relationship to the employment is not known to the employe, the time for giving notice shall not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment.* (Emphasis added.)

This Court has held that for purposes of this section, computing the 120 day time limit for giving notice of an occupational disease runs from the date that a claimant 1) is disabled and 2) knows or should know through the exercise of reasonable diligence of the possible relationship between the disability and his employment. *McManus v. Rochester and Pittsburgh Coal Co.,* 29 Pa. Commonwealth Ct. 91, 94, 368 A.2d 1365, 1367 (1977).

Though the referee in the case *sub judice* made the finding of fact that Claimant first knew of his dis-

ability on May 1, 1980, the referee did not make a finding of when Claimant *should have known* by exercise of reasonable diligence of Claimant's disability and its relationship to Claimant's employment. When there is evidence in the record that Claimant, if he had exercised reasonable diligence, may have acquired such knowledge from which a referee could find that Claimant *should have known* of his disability from an occupational disease and its causal relationship to his employment, a finding by the referee of when Claimant *should have known* these matters is necessary for our review. *Duquesne,* 53 Pa. Commonwealth Ct. at 97, 416 A.2d at 654.

Our review of the record reveals that there is evidence from which the referee could find that Claimant should have known about his disability prior to May 1, 1980. Claimant testified that in April 1979, he received Dr. Klemens' report and that Doctor Klemens told him at the time of the examination that Claimant was unable to work because he had coal dust in his lungs.[3] When a referee fails to make a proper factfinding, the reviewing Court must remand the case so that the error can be cured. *Scranton Garment Co. v. Workmen's Compensation Appeal Board,* 33 Pa. Commonwealth Ct. 190, 194, 381 A.2d 210, 212 (1977). We remand so that the referee can make the proper factfinding regarding whether the Claimant should have known of his disability from an occupational disease which was causally related to his employment prior to May 1, 1980.

#### Order

We vacate the decision of the Workmen's Compensation Appeal Board dated March 18, 1982, at No. A-81575 and remand for proceedings consistent with this opinion. Jurisdiction is relinquished.

---

[3] *See supra* note 1.